IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Courie Dennis; Martha Boettjer; Tania Brown; Harry Corey; Thomas Diaz; Daniel Dodson; John Floyd; Jeffrey Garlington; Jeffrey Grinnell; Stephen Hall; Phil Harmon; Ryan Mann; Jason Marella; Charisse Nagy; Mark Redd; Vanessa Rewis; Shawn Rhoades; Milton Sanders; Tracy Stover; Nick Vinson; Ryan Wagner; Mitchell Whittington; and Tina Wingfield, <br><br> Plaintiffs, <br><br> vs. <br><br> Savannah River Nuclear Solutions, LLC, <br> Defendant. | Civil Action No. 1:25-cv-3546-CMC-TER <br><br><br> **ORDER** |

Through this action, Plaintiffs Courie Dennis; Martha Boettjer; Tania Brown; Harry Corey; Thomas Diaz; Daniel Dodson; John Floyd; Jeffrey Garlington; Jeffrey Grinnell; Stephen Hall; Phil Harmon; Ryan Mann; Jason Marella; Charisse Nagy; Mark Redd; Vanessa Rewis; Shawn Rhoades; Milton Sanders; Tracy Stover; Nick Vinson; Ryan Wagner; Mitchell Whittington; and Tina Wingfield (collectively "Plaintiffs") seek recovery from their former employer, Defendant Savannah River Nuclear Solutions, LLC ("Defendant" or "SRNS"), for alleged failure to accommodate, disparate treatment, and hostile work environment based on their religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ECF No. 1. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B), DSC, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation ("Report").

The matter is before the court on Defendant's motion to dismiss. ECF No. 9.

1.  **Factual Background**

Plaintiffs were employed in various positions at Defendant SRNS. ECF No. 1 at ¶ 1. In response to the COVID-19 pandemic, Defendant imposed a COVID-19 vaccination mandate as a condition of continued employment. *Id.* at ¶ 4. Defendant set a date of October 1, 2021, as a submission deadline for exemption requests and October 15, 2021, as the deadline for employees to receive the first dose of a COVID-19 vaccine. *Id.* at ¶ 7. Plaintiffs timely submitted religious exemption requests "based on their sincerely held religious beliefs in conflict with receipt of a COVID-19 vaccine." *Id.* at ¶ 9. Defendant denied their religious exemption requests, concluding they could not be accommodated due to the burden on Defendant. *Id.* at ¶ 10. Plaintiffs allege they were "terminated, forced into involuntary, early retirement with SRNS, or constructively discharged as a result of SRNS denying their religious accommodation request." *Id.* at ¶ 57.

Plaintiffs bring three causes of action against Defendant: Count 1, Religious Discrimination – Failure to Accommodate; Count 2, Religious Discrimination – Disparate Treatment; and Count 3, Religious Discrimination – Hostile Work Environment.

2.  **Motion to Dismiss**

Defendant moves to dismiss based on res judicata, as a previous case was brought by Plaintiffs in this court challenging Defendant's vaccine mandate. See *Rhoades v. Savannah River*

*Nuclear Solutions*, LLC, No. 1:21-cv-3391 ("*Rhoades*").[1] In *Rhoades*, seventy-nine employees and contractors sought a declaratory judgment, temporary restraining order, preliminary injunction, and permanent injunction to block the implementation of Defendant's vaccine mandate. An Amended Complaint and Second Amended Complaint added additional plaintiffs and sought additional declaratory judgments. No. 1:21-cv-3391 at ECF No. 26 (Second Am. Compl.). The Second Amended Complaint noted certain plaintiffs had been terminated for refusing to receive the vaccine. *Id.* at 41. Plaintiffs in *Rhoades* filed a motion for preliminary injunction (ECF No. 14) that was denied (ECF No. 28). They then filed an interlocutory appeal (ECF No. 29), but that appeal was voluntarily dismissed (ECF No. 37). The *Rhoades* plaintiffs thereafter filed a stipulation of dismissal with prejudice. ECF No. 41.

Defendant asserts res judicata bars claims of Plaintiffs who were parties in *Rhoades* because they could have brought their Title VII claims there. ECF No. 9-1 at 15. Accordingly, it seeks dismissal of all claims in this action except those brought by Brown and Garlington. Plaintiffs filed a response, and Defendant replied.  ECF Nos. 13, 17.

On December 4, 2025, the Magistrate Judge issued a Report recommending Defendant's motion to dismiss be granted. ECF No. 19.  The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so.  Plaintiffs filed timely objections, and Defendant replied. ECF Nos. 21, 27.

---

[1] At no time were Plaintiffs Tania Brown or Jeffrey Garlington part of the *Rhoades* lawsuit. The Report recommends dismissing this action except as to Plaintiffs Brown and Garlington.

### 3. <u>Standard</u>

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court is required to review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of the claims that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.* The

4

court may consider documents attached to the complaint when considering a motion under Rule 12(b)(6). *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

An affirmative defense, such as res judicata, may be considered on a motion to dismiss "only if it clearly appears on the face of the complaint." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). The court can take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact. *Id.*

### 4. <u>Discussion</u>

The Magistrate Judge recommends granting Defendant's motion to dismiss, except as to the claims brought by Plaintiffs Brown and Garlington, based on res judicata. ECF No. 19. Specifically, the Magistrate Judge found all three factors required for res judicata are present here: there was a final judgment on the merits in a previous lawsuit with identities of the causes of action and identities of parties in both lawsuits.

Plaintiffs object, contending the claims here do not "arise out of the same transaction or series of transactions" as *Rhoades*. ECF No. 21 at 3. They argue the Report incorrectly relied on non-binding precedent and "erroneously found Plaintiffs could have brought their Title VII claims in *Rhoades*." *Id.* at 7.

5

Defendant replied to Plaintiffs' objections. ECF No. 27. It requests the court overrule Plaintiffs' objections, adopt the Report, and dismiss the case except as to Plaintiffs Brown and Garlington.

### a. Res Judicata

For the doctrine of res judicata to apply, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004). Here, the parties do not dispute there was a final judgment on the merits in *Rhoades*, or that there is identity of the parties (save for Brown and Garlington). However, Plaintiffs contend there is not an identity of causes of action sufficient for res judicata to apply, as they raise Title VII claims here and the claims in *Rhoades* only challenged the constitutionality of the vaccine mandate.

The determination of whether two suits arise out of the same cause of action, however, does not require the claims asserted to be identical. Rather, it turns on whether the suits and the claims asserted therein "arise out of the same transaction or series of transactions or the same core of operative facts." *Pueschel*, 369 F.3d at 355. If the claims were required to be identical, parties could plead their way around res judicata by splitting claims "given that a single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statues, and the common law." *Id.* Accordingly, res judicata bars not only claims that were litigated in a prior proceeding, but claims that *could have been* litigated. *Id.* at 355-56 (emphasis added); *see also Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) ("The preclusive

affect [*sic*] of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for "[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). However, res judicata does not bar claims that did not exist at the time of the prior litigation. This is an objective standard, and "it is the existence of the present claim, not party awareness of it, that controls." *Meekins*, 946 F.2d at 1057.

The Magistrate Judge determined an identity of claims exists, barring this case under res judicata.

**Objection No. 1.** Plaintiffs' first objection centers on the standard for res judicata and the "required comparison of factual allegations" between the two lawsuits, relying significantly on Judge Posner's "detailed reasoning" in the Seventh Circuit decision *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223 (7th Cir. 1993) ("We suggest that two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations."). ECF Nos. 21 at 2; 21-1 at 8. They assert each Plaintiff's religious discrimination claim under Title VII requires a "completely different set of facts 'related in time, space, origin, and motivation'" to the facts in the *Rhoades* case challenging the vaccine mandate. ECF No. 21-1 at 8. They also contend they could not have amended the Complaint in *Rhoades* to include Title VII claims because the EEOC did not issue a right to sue letter until January 31, 2025, well after the *Rhoades* case was voluntarily dismissed in August 2022.

In response, Defendant notes *Herrmann* is non-binding, out of circuit authority and differs from the standard in the Fourth Circuit, which does not require comparison and precise matching of factual allegations to determine claims arise out of the same transaction or occurrence. ECF No. 27 at 3-4. Defendant also explains *Herrmann* itself acknowledges its application to cases "lying at the extremes" not the "difficult intermediate cases – where there is substantial factual overlap between the two claims." *Herrmann*, 999 F.2d at 227.

The court agrees with the Magistrate Judge the *Herrmann* standard is more exacting than that required by the Fourth Circuit. Plaintiffs point to no Fourth Circuit authority requiring the degree of factual similarity "suggested" by Judge Posner in *Herrmann*. *Compare Herrmann*, 999 F.2d at 226 ("[W]e suggest that two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations."), *with Pueschel*, 369 F.3d at 355 (both suits assert claims based on an "alleged pattern of . . . conduct" that arose out of the "same transaction or series of transactions or the same core of operative facts."); *see also Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013 ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: as long as the second suit arises out of the same transaction or series of transactions resolved by the prior judgment, the first suit will have preclusive effect."). In addition, *Herrmann* specifically disclaimed use of the "pragmatic" standard for res judicata, as applied by the Fourth Circuit in *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986 ("[W]e measure the scope of transaction or series of connected transactions by considering pragmatic factors such as common origin and relation . . .") (citing Restatement

8

(Second) of Judgments § 24(2) (1982)). Accordingly, the court will not apply the *Herrmann* standard for factual similarity and will rely instead on binding Fourth Circuit authority.[2]

**Objection No. 2.** Plaintiffs next argue the Report erroneously concluded the Title VII claims here "arise out of the same transaction or series of transactions" as the claims in *Rhoades*. ECF No. 21-1 at 10. They assert *Rhoades* challenged only the legal authority to implement a vaccine mandate as a condition of continued employment, and did not deal with Plaintiffs' religious objections to the vaccine or alleged discrimination based on religion. They contend the two cases arose only in the "same general timeline after Defendant instituted a vaccine mandate." *Id.* at 11. Plaintiffs argue their Title VII injuries had not yet accrued when the prior action was filed, because the Title VII claims arose only upon the denial of religious accommodations and resulting adverse employment actions, which they assert had not yet occurred when *Rhoades* was filed. *Id.* at 12.

Defendant replied, supporting the Magistrate Judge's finding that the two cases arose from the same transaction or series of transactions. ECF No. 27 at 5. It explains Plaintiffs in *Rhoades* amended their complaint twice after the current Plaintiffs suffered adverse actions related to their religious objections to the vaccine. *Id.* Accordingly, and because "claims may arise out of the same

---

[2] This does not mean a comparison of the facts is not allowed or permitted. The court may review the facts of both lawsuits to determine if they arise from the same transaction or series of transactions. However, it will not require the facts to be "the same or nearly the same factual allegations" as required by *Herrmann*.

transaction or series of transactions even if they involve different harms or different theories or measures of relief," *Harnett*, 800 F.2d at 1314, Defendant asserts res judicata applies here.

The court has compared the factual allegations in *Rhoades* to the ones alleged here, and finds they arise out of the same transaction or series of transactions alleged in the prior case. In the Second Amended Complaint, the *Rhoades* Plaintiffs alleged Defendant SRNS issued a vaccine mandate requiring all employees, including badged subcontractors, to be fully vaccinated, with the first dose received on or before October 15, 2021, unless exempted. Case No. 1:21-cv-03391, ECF No. 26 at 41. Plaintiffs alleged Defendant was "requiring Plaintiffs to submit to the vaccinations or lose their jobs." *Id.* The *Rhoades* Second Amended Complaint alleges at least one Plaintiff, who is also a plaintiff in the instant case (Phil Harmon) was terminated on October 14, 2021, for refusing to receive the vaccination. *Id.* at 42.

In the instant case, Plaintiffs allege the same vaccine mandate was imposed, requiring the first dose of the vaccine to be received by October 15, 2021, and set October 1, 2021, as the submission deadline for religious or medical exemption requests. ECF No. 1 at 2. Plaintiffs assert they timely submitted religious accommodation requests that were denied based on an undue burden on the employer. *Id.* at 3. "Ultimately, adverse employment action was taken against all Plaintiffs after they submitted a religious accommodation request," were denied, and refused to receive the vaccine. *Id.*

The court finds the two actions arose out of the same transaction or series of transactions, namely, the imposition of the vaccine mandate by Defendant and Plaintiffs' opposition to receiving the vaccine. *See Romer v. City of North Charleston*, No. 2:22-cv-04254, 2024 WL 4485908, at *6-

7 (D.S.C. July 19, 2024) (finding Title VII claims were "based on the same underlying transaction as and could have been brought in the earlier action" as the previous vaccine mandate claims, and thus were barred by res judicata). The facts giving rise to Plaintiffs' claims in this action – the imposition of the vaccine mandate, Plaintiffs' attempts to be exempted from that mandate, and the adverse actions against them – took place while the *Rhoades* action was pending. ECF No. 1 (Compl.) at ¶ 69 ("SRNS denied all religious accommodation requests" on or around October 11, 2021); *id.* at ¶ 107 ("SRNS terminated and/or constructively discharged Plaintiffs in October of 2021").

Plaintiffs argue a "Title VII religious-accommodation claim does not arise from the mere announcement of a workplace policy; it arises only upon the denial of a religious accommodation and the imposition of adverse employment actions." ECF No. 21-1 at 12. Although such actions may not have occurred when *Rhoades* was *filed* on October 14, 2021, there is evidence in the record that these events had taken place for some Plaintiffs (including Harmon)[3], by the time the Second Amended Complaint was filed in *Rhoades* on December 1, 2021.[4]

---

[3] Plaintiffs acknowledge the Second Amended Complaint in *Rhoades* included allegations some plaintiffs had been terminated. ECF No. 21-1 at 12 (citing *Rhoades* Second Am. Compl. at 4, 41 ("adding allegations that some plaintiffs were fired").

[4] Based on the timing as alleged in the two cases, Plaintiffs' own allegations show all Plaintiffs here had adverse action taken against them by the time of the Second Amended Complaint in *Rhoades*. See ECF No. 1 at ¶ 69 ("On or around October 11, 2021, SRNS denied all religious accommodation requests"; *id.* at ¶ 107 ("SRNS terminated and/or constructively discharged Plaintiffs in October of 2021").

11

Accordingly, the court finds Plaintiffs' Title VII claims arise out of the same transaction or series of transactions as the *Rhoades* case. Plaintiffs' Objection 2 is overruled.

**Objection No. 3.** In their third objection, Plaintiffs contend the Report misapplies the Rule 12(b)(6) standard and resolves disputed facts. ECF No. 21-1 at 12. They assert the Report relies almost solely on a previous South Carolina district court case, *Romer*, which was decided on summary judgment on "a far more developed record." *Id.* at 13. They discuss the factual record outside the pleadings, including emails with the EEOC (attached to their objections), to show "Plaintiffs could not have abandoned the EEOC's investigative process because the EEOC was actively pursuing a remedy on their behalf." *Id.* They contend the court would have reached a different conclusion had the factual record been developed, and the court should "convert the motion pursuant to Rule 12(d) to a Rule 56 motion and permit discovery." *Id.* at 15.

Defendant disagrees, noting res judicata may bar Title VII claims even when Plaintiffs' administrative remedies had not been exhausted. ECF No. 27 at 6. It notes the emails attached by Plaintiffs are not admissible and should not be considered, but even if the court does consider them, they do not support Plaintiffs' third objection. *Id.* at 7.

As noted above, the court may consider a res judicata defense in a motion to dismiss under Rule 12(b)(6) "only if it clearly appears on the face of the complaint." *Andrews*, 201 F.3d at 524 n.1. The court can also take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact. *Id.*

The court has not considered the emails attached by Plaintiffs to their objections. It is clear from the face of the Complaint in this matter res judicata is applicable – the court need not review

12

materials outside the pleadings, other than facts from the prior proceeding (*Rhoades*), of which it takes judicial notice. To the extent Plaintiffs assert the Magistrate Judge resolved disputed facts, the court disagrees. The Report, and this Order, take facts directly from Plaintiffs' Complaint here and the *Rhoades* Second Amended Complaint. Plaintiffs note they "dispute the factual scope of *Rhoades*, whether Title VII claims had accrued, whether Title VII claims could have been raised, the timing and content of accommodation denials, and whether Plaintiffs suffered individualized adverse actions not addressed in *Rhoades*." ECF No. 21-1 at 14. However, these issues are legal, not factual. Further, and again, the facts utilized by this court are taken directly from Plaintiffs' Complaint. Do Plaintiffs dispute their own factual allegations?

The court is able to determine, from the face of the instant Complaint and the Second Amended Complaint in *Rhoades*, that there is an identity of claims. Further factual development via discovery is not necessary to make this legal determination. Plaintiffs' third objection is overruled.

**Objection No. 4.** Plaintiffs' next objection argues the Report erroneously rejects Plaintiffs' "convenient trial unit" argument, asserting bringing their Title VII claims in *Rhoades* would not have been procedurally practical. ECF No. 21-1 at 15. They contend their Title VII claims require individualized and plaintiff-specific allegations and proof at multiple stages of the analysis, and no EEOC investigation had been concluded when *Rhoades* was dismissed. *Id.* at 16. Plaintiffs assert the filing prerequisites for Title VII claims, including an EEOC investigation, render it "practically impossible" for *Rhoades* to proceed as a "convenient trial unit" including Plaintiffs' Title VII claims. *Id.* at 17.  Finally, they submit adding Title VII claims in *Rhoades* would render

13

it "practically impossible to obtain the injunctive relief sought (because the case would have had to be stayed pending resolution of the EEOC investigation, eviscerating the prospect of prompt injunctive relief)." *Id.*

Defendant supports the Magistrate Judge's Report, arguing it validly concluded the *Rhoades* plaintiffs could have pursued the Title VII claims in that case, resulting in a convenient trial unit. ECF No. 27 at 8. This is supported by their claims in the instant case, in which twenty-three Plaintiffs brought individualized Title VII religious discrimination claims as one trial unit. *Id.* Defendant also notes Plaintiffs could have requested the EEOC issue a right to sue letter to allow their civil action to move forward, and Plaintiffs were not required to await the conclusion of the EEOC investigation prior to bringing a federal lawsuit. Finally, Defendant notes the *Rhoades* plaintiffs voluntarily dismissed their lawsuit in August 2022, such that "any purported timing issue was one of Plaintiffs' own creation." *Id.* at 9.

Whether the matters would have formed a "convenient trial unit" is one factor courts consider when determining if the claims in two cases arise out of the same transaction or series of transactions. *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999) (quoting *Restatement (Second) of Judgments* § 24 cmt. b) ("Among the factors to be considered in deciding whether the facts of the current and prior claims 'are so woven together' that they constitute a single claim 'are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'"). In the Report, the Magistrate Judge noted the instant case is similar to the scenario described by Plaintiffs as impractical or impossible in *Rhoades*: twenty-three Plaintiffs, each with individualized allegations regarding religious beliefs, accommodation

14

requests, and adverse employment actions. ECF No. 19 at 20. Further, the Second Amended Complaint in *Rhoades* was comprised of eighty-nine pages, including eleven pages of individualized facts about the parties and fifty-seven pages of information about various COVID-19 vaccines, the FDA, South Carolina's public policy and actions during COVID. Case No. 1:21-cv-03391, ECF No. 26. There were approximately two pages of specific facts regarding Defendant's vaccine mandate, Plaintiffs' refusals to take the vaccine, and adverse employment actions that followed. *Id.* at 41-42.

To amend the complaint in *Rhoades* to include Plaintiff-specific allegations regarding their religious beliefs, requested exceptions, and adverse employment actions would have required the exact pleading actions taken by Plaintiffs in the instant case, where those allegations exist. The court sees no difficulty in adding those allegations to the *Rhoades* complaint beyond what was required to bring this action.

Plaintiffs assert they were not issued a right to sue letter until January 31, 2025, after an investigation by the EEOC and attempts to resolve the issues with religious accommodations for the vaccine mandate. ECF No. 1 at 126. Title VII requires an individual to obtain a notice of right to sue from the EEOC before bringing a claim in federal court.

> If a charge filed with the Commission ... is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference ... whichever is later, the Commission has not filed a civil action under this Section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

15

42 U.S.C. § 2000e–5(f)(1). The Fourth Circuit has "long held that receipt of, or at least entitlement to, a right to sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. North Carolina Dept. of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995). "It is entitlement to a right to sue notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal court." *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982). Accordingly, a plaintiff may request a right to sue notice from the EEOC after filing a charge of discrimination if the charge was dismissed by the Commission, or if the Commission has not filed a civil action or entered into a conciliation agreement within 180 days of the filing of the charge. *Veliaminov v. P.S. Bus. Parks*, 857 F. Supp. 2d 589, 593 (E.D. Va. 2012) (finding the plaintiff was entitled to a right to sue letter regarding his Title VII claims when the EEOC had not dismissed the charge, filed a civil action, or entered into a conciliation agreement with plaintiff for more than 180 days.).

Plaintiffs allege they each (except Mr. Wagner) filed charges of discrimination with the EEOC, and attached some charges to the Complaint. *Id.*; ECF No. 1-1[5]. The dated charges attached were filed prior to dismissal of the *Rhoades* lawsuit. Plaintiffs contend they were cooperating with an EEOC investigation and attempting to globally resolve their claims administratively. It does

---

[5] The right to sue letters attached relate to three Plaintiffs: Dodson, Redd, and Wingfield. Mr. Dodson's submission is unsigned and undated. Mr. Redd's form was dated June 29, 2022, and Ms. Wingfield's form was dated December 7, 2021. ECF No. 1-1 at 2-3; 5-6; 9-10.

not appear the EEOC dismissed the charges, filed a civil action, or entered into a conciliation agreement with Plaintiffs for more than 180 days.[6]

Plaintiff Wingfield filed her EEOC charge on December 7, 2021. ECF No. 1-1 at 8-9. 180 days from that filing would be approximately June 6, 2022. At this point, after the 180 day period had expired, at least Plaintiff Wingfield was entitled to request a right to sue letter. However, issuance of a right to sue notice would likely have terminated the EEOC's investigation and attempts at an administrative resolution. *See Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994) (finding once a right to sue letter has issued, there is no longer a charge pending before the EEOC); *Adams v. Wallenstein*, 814 F. Supp. 2d 516, 522 (D. Md. 2011) ("A right-to-sue letter only signals that the EEOC is finished with its involvement in a particular proceeding. . . ."). Accordingly, Plaintiffs may have had to choose between requesting a right to sue letter, to which they may have been entitled, during the pendency of *Rhoades*, and continuing to pursue resolution through the EEOC.

---

[6] The court notes there is a regulation allowing the EEOC to issue a notice of right to sue before 180 days have elapsed if an appropriate EEOC official has determined it is probable the EEOC will be unable to complete its administrative processing of the charge within 180 days of the filing, and has attached a written certificate to that effect. 29 C.F.R. § 1601.28(a)(2). There is a circuit split regarding whether this is a valid regulation, with the Ninth, Tenth, and Eleventh Circuits finding the regulation is valid, but the D.C. Circuit finding it invalid. *Compare Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1275 (10th Cir. 2001); *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984), *with Martini v. Federal Nat. Mortg. Ass'n*, 178 F.3d 1336, 1345 (D.C. Cir. 1999). The Fourth Circuit has declined to address the validity of the regulation. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 248 (4th Cir. 2001).

17

The Magistrate Judge notes Plaintiffs could have asserted their Title VII claims in *Rhoades* and requested to stay that action pending receipt of a right to sue notice from the EEOC. ECF No. 19 at 17. Plaintiffs argue this avenue was untenable, as they would have had to sacrifice their injunctive claims, which require a prompt resolution, if a stay had been entered. ECF No. 21-1 at 17. The court finds this argument belied by the procedural posture of the *Rhoades* case, in which the plaintiffs pursued preliminary injunctive relief while continuing to amend and refine their complaint until the injunction was denied. *See* Case No. 1:21-cv-03391, ECF No 26 (Second Amended Complaint) (filed December 1, 2021); ECF No. 28 (Order denying Preliminary Injunction) (filed December 3, 2021). They continued to add allegations and plaintiffs while the preliminary injunction motion was pending.

The *Rhoades* plaintiffs were able to pursue prompt injunctive relief, but once it was denied, they could have moved to amend to add the Title VII claims now asserted and then requested a stay pending the right to sue letter. They would not have had to choose between injunctive relief and awaiting a right to sue letter so the Title VII claims could be added. Instead, they voluntarily dismissed the *Rhoades* action while at least some plaintiffs' EEOC charges were pending.

Accordingly, the court finds Plaintiffs could have brought their Title VII claims as a "convenient trial unit" within *Rhoades* by amending the complaint to include discrimination claims after preliminary injunctive relief was denied. The court therefore overrules the objection contending Plaintiffs could not bring their claims as a convenient trial unit.

**Objection No. 5.** Plaintiffs contend the Report's factual summary contains numerous disputed statements, to which they object. ECF No. 21-1 at 18. Defendant opposes, noting none

of the challenged statements appear in the Report's fact section, but in the legal analysis, and none are statements of disputed fact. ECF No. 27 at 9. The court will review each challenged statement in turn.

First, Plaintiffs object to the Report's statement that "adverse action was taken…after [plaintiffs] submitted a religious accommodation request," citing page 11 of the Report. ECF No. 21-1 at 18. As Defendant notes, Plaintiffs appear to somehow challenge a quote taken directly from their Complaint and attributed as such in the Report. Plaintiffs assert this "generalized statement fails to account for the distinct and individualized timelines of each Plaintiff's accommodation request, leave placement, and separation, as reflected in the Complaint and in the varied EEOC Charges attached thereto." *Id.* at 18 (citing Compl. ¶¶ 11-14; EEOC Charges). Plaintiffs' Complaint, however, does not provide this particularized information in the paragraphs cited, and EEOC charges were only attached for three Plaintiffs. The court overrules this objection.

Plaintiffs next object to the Report's statement that the alleged adverse actions "give rise to both *Rhoades* and the present case." *Id.* This assertion leaves out the majority of the sentence in the Report, which noted "[t]he series of connected transactions here – the vaccine mandate, the denial of Plaintiffs' requested exemption from the mandate, and the adverse actions suffered by Plaintiffs, including termination, for failure to obtain the vaccine – give rise to both *Rhoades* and the present case." ECF No. 19 at 13. Further, although Plaintiffs argue the *Rhoades* pleadings did not seek redress for individualized adverse employment actions or religious discrimination claims, res judicata bars not only claims raised but claims that could have been raised in a prior action. Plaintiffs' objection to this statement is overruled.

Third, Plaintiffs challenge the Report's assertion the two cases are "sufficiently related in time, space, origin, and motivation." ECF No. 21-1 at 18. They assert "this conclusion improperly glosses over the fundamentally different *nature*, *rights*, and *timing* of the operative facts supporting the Title VII claims here, which accrued only after individualized religious-accommodation denials issued on October 11, 2021, and after employees were placed on leave beginning October 14-15, 2021." *Id.* Again, as noted by Defendant, consideration of the time, space, origin, and motivation are factors to be considered when determining whether the current and prior claims are sufficiently related for res judicata to apply, as stated in Fourth Circuit authority. *See Pittston Co.*, 199 F.3d at 704. Nature, rights, and timing are not mentioned in the test. Further, Plaintiffs make it clear in this objection the accommodation denials and adverse actions took place during pendency of the *Rhoades* action, which was dismissed in August 2022.

Fourth, Plaintiffs object to the Report's "inference" the *Rhoades* plaintiffs "could have" amended their complaint to add Title VII claims. ECF No. 21-1 at 18. They bring the same arguments raised in other objections that they could not have brought the Title VII claims in *Rhoades*. The timing, individualized allegations, and legal theories have been discussed. This objection is overruled.

Finally, Plaintiffs object to the Report's conclusion the claims would form a convenient trial unit. This has also been discussed and overruled above. Plaintiffs' Objection No. 5 is overruled in its entirety.

**Objection No. 6.** Plaintiffs next challenge the Report's reliance on statements made in the preliminary injunction briefing filed in *Rhoades*, as they contend the court may only look to the

20

pleadings to decide res judicata. ECF No. 21-1 at 19. Defendant asserts the court may take judicial notice of the prior case, including filings outside the pleadings. ECF No. 27 at 11.

The court agrees it may take judicial notice of the prior action when the res judicata defense raises no disputed issue of fact regarding the factual accuracy of the record of the previous suit. *Andrews*, 201 F.3d at 524 n.1 ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). Accordingly, the court has taken judicial notice of the previous *Rhoades* case and the filings therein, including the motion for preliminary injunction in which Plaintiffs asserted it "appeared" Defendant had a blanket policy of denying religious exemption requests on the grounds it could not make "reasonable accommodations" for employees seeking such an exemption. Case No. 1:21-cv-03391, ECF No. 14 at 4.

Plaintiffs' objection number 6 is overruled.

**__Objection No. 7.__** Next, Plaintiff asserts the Report incorrectly relied on the *Romer* case "as controlling or persuasive authority." ECF No. 21-1 at 21. Plaintiffs contend *Romer* is an "outlier" and is not applicable here because the defendant was a governmental actor instead of a private company. They submit the *Rhoades* allegations did not "telegraph" a religious discrimination claim, "in contrast to the *Bauer*/*Romer* nucleus of operative facts." *Id.* at 22. In response, Defendant argues the Report's reliance on *Romer* as recent, persuasive authority was proper. ECF No. 27 at 12.

Although *Romer* is not controlling authority, the court agrees it is persuasive as a recently decided case in this court with nearly identical facts and strong reasoning. The court recognizes

21

*Romer* dealt with a municipality as the employer, not a private authority, but the operative issues

regarding Title VII and res judicata do not appear affected by this difference. The facts of *Romer*

and the previous case, *Bauer v. Summey*, 568 F. Supp. 573 (D.S.C. 2021), as cited in Plaintiffs'

objections, demonstrate this:

> In *Romer*, the plaintiff had previously sued his employer, the City of Charleston, .
> . . because the City imposed a mandatory COVID-19 vaccine requirement on all
> City of North Charleston employees. In *Romer*, it was at least factually plausible –
> if not legally permissible – for the district court to infer 'same transaction or
> occurrence' in *Bauer/Romer* because the plaintiff was challenging the ***public***
> employer's policies in both suits. In Bauer, the plaintiffs, who were 'allegedly
> subject to the City of Charleston's personnel policy, filed for administrative
> exemptions from the [vaccine] mandate' and claimed that 'no individual plaintiff's
> request has been approved.'

ECF No. 21-1 at 21 (internal citations omitted). It appears to the court this is the same factual

scenario as the instant case, with the exception of the bolded word "public" in Plaintiffs'

objections. Plaintiffs contend the plaintiffs in *Bauer* had a property interest in their jobs, "so their

right to relief arose directly from their employment relationship with the City and the Constitution

of South Carolina, which governs the same." *Id.* at 22. The *Rhoades* plaintiffs "challenged the

vaccine mandate under an attenuated contract theory, . . ." and "the complaint contain[ed] almost

no allegations about SRNS's actions or processes" as SNRS is a private employer with no due

process restrictions on its employment decisions." *Id.*

"Claims may rise out of the same transaction or series of transactions [for purposes of res

judicata] even if they involve different harms or different theories or measures of relief." *Harnett*,

800 F.2d at 1314. Plaintiffs attempt to create a distinction without a difference by arguing the

public employer in *Bauer/Romer* is so differently situated from the private one in *Rhoades* and the

instant case that *Romer* cannot serve as persuasive authority directly on point. The court disagrees. On a fundament level, the plaintiffs in *Bauer/Romer* challenged their employer's vaccine mandate and the denied exemptions. The same is true here. The court finds the Report's citation to and explanation of the similarities in *Romer* and this case are persuasive and helpful to the analysis in this case. Plaintiffs' objection number 7 is overruled.

**Objection No. 8.** Plaintiffs also allege *Romer* is wrongly decided because it improperly expands the doctrine of res judicata and "conflicts with Fourth Circuit precedent." ECF No. 21-1 at 22-23. They contend *Romer* improperly relied on a series of appeals court cases holding employment discrimination plaintiffs could not bring claims based on the same termination in two successive lawsuits based on the EEOC's administrative exhaustion requirements. *Id.* at 23 (citing *Hermann*; *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 37-41 (2d. Cir. 1992)). Plaintiffs focus on *Romer*'s holding that employment discrimination plaintiffs could stay their cases to wait for the EEOC to issue a right to sue letter, and again argue the *Bauer/Romer* plaintiffs sought "time sensitive, injunctive relief" and requiring them to stay their cases would require them to "choose one remedy and abandon another." *Id.* at 23-24. They cite two cases, asserting a choice of remedies precludes application of res judicata. *Id.* at 24 (citing *Passaro v. Virginia*, 935 F.3d 243, 252 (4th Cir. 2019); *Davenport v. N.C. Dep't of Transp.*, 3 F.3d 89, 97 (4th Cir. 1993)).

In reply, Defendant notes the *Romer* report cited the "series of appeals court cases" for the limited finding that res judicata bars subsequent Title VII claims, even where the plaintiff has not exhausted his administrative remedies. ECF No. 27 at 13-14. It argues neither the *Romer* plaintiffs nor the *Rhoades* plaintiffs had to choose between injunctive relief and remedies available under

23

Title VII, as Plaintiffs sought injunctive relief denied by the *Rhoades* court over eight months before they voluntarily dismissed the lawsuit. It contends the cases cited by Plaintiffs, *Passaro* and *Davenport*, did not apply federal res judicata law and concerned state grievance procedures that did not allow for damages awards and/or § 1983 actions, and so are not on point.

The court has considered Plaintiffs' argument that they would have had to elect remedies in order to bring their Title VII claims in *Rhoades*, and has rejected it as it is clear the *Rhoades* plaintiffs were able to pursue injunctive relief and then could amend their complaint to add the Title VII claims. The court has reviewed *Passaro* and *Davenport*, and finds them inapposite to the current case. In *Passaro*, where Virginia res judicata law was applied, the plaintiff could not have pursued his entire case in either the Virginia grievance process or a Title VII civil action because each had remedies unavailable in the other. 935 F.3d at 250-51. Similarly, North Carolina res judicata law was applied in *Davenport*, which found an administrative procedure did not bar a § 1983 federal lawsuit when treating the claims as the same would have a "preclusive election between two remedial paths neither of which would allow fair litigation of all claims that otherwise properly could be asserted." 3 F.3d at 97. As discussed above, that is not the case here. Plaintiffs were not required to elect between injunctive relief, which had already been sought and denied in *Rhoades* before the case was dismissed, and later moving to stay pending issuance of their right to sue letter for the Title VII claims. Accordingly, Plaintiffs' eighth objection is overruled.

**Objection No. 9.** Plaintiffs "object to the recommendation of dismissal in its entirety." ECF No. 21-1 at 25. Because an equitable remedy of claim preclusion is sought, they argue the court "must take equity into consideration." *Id.* (quoting *Gomez v. United States Dist. Court*, 503

U.S. 653, 654 (1992)). Plaintiffs assert they participated in the EEOC process for years "with the understanding they had valid Title VII claims that were not even potentially precluded by the *Rhoades* lawsuit." ECF No. 21-1 at 25. They assert their employer is not being asked to relitigate employment claims or unsettle a prior judgment. *Id.* at 26. They request their objections be sustained and they be allowed to proceed with their claims.

Defendant contends Plaintiffs cannot rely on equity to avoid res judicata, as there is no "fairness" exception to the doctrine. ECF No. 27 at 15 (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ("There is no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.")). It requests the court overrule Plaintiffs' objections and bar Plaintiffs' Title VII claims based on res judicata.

The quotation cited by Plaintiffs for their equity argument is not properly quoted. Plaintiffs note "[w]hen a party seeks an equitable remedy, like claim preclusion, 'equity must be taken into consideration.'" ECF No. 21-1 at 25 (citing *Gomez*). However, *Gomez* does not stand for that proposition, and the quotation is incorrect. Instead, the Supreme Court stated even if the plaintiff in that case could avoid a bar to his successive habeas claim, it "would not consider it on the merits." 503 U.S. at 653. The Court noted whether his claim was one sounding in habeas or under § 1983, the plaintiff sought an equitable remedy, and "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and [plaintiff's] obvious attempt at manipulation." *Id.* at 654. The *Gomez* Court did not hold equity must be taken into consideration when a party seeks an equitable remedy.

25

In addition, the court agrees with Defendant there is not a "fairness" or "equity" exception to res judicata, as held by the Supreme Court. *Federated Dep't Stores*, 452 U.S. at 401 ("There is simply no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata."). The court cannot therefore release Plaintiffs from the requirements of res judicata simply because they did not foresee their religious discrimination claims being precluded.

### 5. <u>Conclusion</u>

After de novo review, for the reasons above, the court adopts the Report and incorporates it by reference into this Order. Res judicata applies to bar Plaintiffs' Title VII claims and current complaint. Defendant's motion to dismiss (ECF No. 9) is granted. Claims by Plaintiffs Dennis, Boettjer, Corey, Diaz, Dodson, Floyd, Grinnell, Hall, Harmon, Mann, Marella, Nagy, Redd, Rewis, Rhoades, Sanders, Stover, Vinson, Wagner, Whittington, and Wingfield are hereby dismissed with prejudice. This case will continue as to the claims of Plaintiffs Tania Brown and Jeffrey Garlington, and is re-referred to the Magistrate Judge for pretrial proceedings.

**IT IS SO ORDERED**.

<u>s/Cameron McGowan Currie</u>
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 6, 2026